No. 711 July 29, 2026 789

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KYLE IVAN SPICER,
*Defendant-Appellant.*

Lane County Circuit Court
23CR57786; A185041

Debra E. Velure, Judge.

Argued and submitted May 21, 2026.

Kelsey Townsend, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for driving while suspended (DWS) and failure to perform duties of a driver when property is damaged (hit and run). On appeal, defendant raises a single assignment of error, contending that the trial court erred by admitting evidence of defendant's prior abuse of a witness over defendant's OEC 403 objection. Defendant argues that the evidence of prior abuse was substantially more prejudicial than probative and that the trial court abused its discretion in admitting it. *See State v. Alvarado*, 312 Or App 177, 187, 492 P3d 712 (2021) (reviewing a trial court's decision to admit evidence challenged under OEC 403 for abuse of discretion). We agree with defendant and therefore reverse and remand.

The following facts are undisputed. Defendant's wife, Mitchell, owned a white Honda.[1] In November 2023, that white Honda made a left turn at an intersection and collided with a vehicle, which had the right of way. Both vehicles were damaged by the collision. The driver of the white Honda drove away from the scene without exchanging information with the other driver. Defendant was later arrested and charged with DWS and hit and run. Defendant stipulated to the fact that, at the time of the collision, his driving privileges had been revoked. His defense to the charges relied entirely on the theory that it was defendant's friend, Bubba, who had been driving the white Honda at the time of the collision, not defendant.

At trial, the state called Mitchell as a witness. Although Mitchell did not witness the collision, she did testify to having seen Bubba driving defendant home in the Honda after the collision. The prosecutor asked Mitchell several questions regarding her relationship with defendant. The prosecutor asked how long Mitchell had been in a relationship with defendant and how defendant being convicted would impact Mitchell financially.[2] The prosecu-

---

[1] Although defendant and Mitchell were not legally married at the time of the proceedings, they had been in a relationship for nearly two decades and referred to each other as husband and wife.

[2] When asked whether defendant being convicted would create a financial hardship for her, Mitchell testified, "A small one, but not big enough that it would affect me too bad." The state also presented evidence, through the testimony of

tor then asked, "Are you afraid of [defendant]?" to which Mitchell answered, "No." The prosecutor followed up by asking, "Has [he] ever abused you in the past?" Defense counsel objected to that question, explaining that he was objecting to the prior bad acts evidence on the grounds of OEC 403 because the evidence was significantly more prejudicial than probative. The prosecutor explained that she believed the evidence went to Mitchell's bias and impeached her testimony that she did not fear defendant.

The trial court admitted the evidence, explaining that it was "relevant for bias or motive" and served to impeach Mitchell's testimony that she was not afraid of defendant. The court further explained that, although discussion of a prior bad act would entail a prejudicial effect, Mitchell's testimony related to whether defendant was driving the car, so her credibility, bias, and motive "related to that element of the crime, and the State has a strong interest in that." The prosecutor again asked Mitchell whether defendant had abused her in the past, to which she said, "Yes."

On appeal, defendant argues that the trial court erred by admitting evidence of defendant's prior abuse of Mitchell over defendant's OEC 403 objection. Under OEC 403, relevant evidence may be excluded if, as pertinent to this case, "its probative value is substantially outweighed by the danger of unfair prejudice[.]" When determining whether to exclude evidence under OEC 403, courts engage in a four-step process: (1) "[a]ssess the proponent's need for the *** evidence" by analyzing the "probative value of the evidence and consider[ing] the weight or strength of the evidence," (2) "determine how prejudicial the evidence is, to what extent the evidence may distract the jury from the central question whether the defendant committed the charged crime," (3) balance "the [proponent's] need for the evidence against the countervailing prejudicial danger of unfair prejudice," and (4) make a ruling regarding whether to admit or exclude, in whole or in part, the evidence. *State v. Mayfield*, 302 Or 631, 645, 733 P2d 438 (1987).

---

defendant and Mitchell's landlord, that Mitchell had come to her to pay rent early so that Mitchell would "be okay while [defendant] was gone."

The trial court's admission of evidence under the *Mayfield* framework was outside the range of legally permissible choices because the evidence was substantially more prejudicial than probative. *See State v. Gibson*, 299 Or App 582, 589, 451 P3d 259 (2019), *rev den*, 366 Or 691 (2020) ("In evaluating a trial court's discretionary ruling under OEC 403, our role is to assess whether the court's decision falls within the range of legally permissible choices."). First, any probative value of the evidence was slight. The state contends on appeal, as it did below, that the state needed to be able to impeach Mitchell because she was biased and was providing potentially exculpatory evidence. However, the evidence of prior abuse was cumulative of the other bias evidence that had been introduced—including information about the length of defendant and Mitchell's relationship and possible financial repercussions for Mitchell if defendant were convicted. Mitchell also did not provide any direct evidence of who was driving the vehicle at the time of the collision, just circumstantial evidence—who she saw driving it later.

Further, Mitchell's testimony that defendant had perpetrated domestic violence in the past was highly prejudicial, outweighing any minimal probative value. *See Alvarado*, 312 Or App at 190 ("Evidence is unfairly prejudicial under OEC 403 if it has 'an undue tendency to suggest decisions on an improper basis, commonly although not always an emotional one.'" (Quoting *State v. Moore*, 324 Or 396, 407-08, 927 P2d 1073 (1996).)). Evidence that defendant was a perpetrator of domestic violence was inflammatory and was likely to have influenced the jury to decide his guilt on an improper basis. *See State v. Williams*, 357 Or 1, 18, 346 P3d 455 (2015) (explaining that the admission of other acts evidence carries the risk of a jury "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that [they] did the later bad act now charged" (quoting *Old Chief v. United States*, 519 US 172, 180, 117 S Ct 644, 136 L Ed 2d 574 (1997))); *Mayfield*, 302 Or at 644 ("Evidence is prejudicial under OEC 403 if it tempts the jury to decide the case on an improper basis[.]"). Therefore, we conclude that the trial court erred when it admitted evidence of defendant's prior abuse of Mitchell over defendant's OEC 403 objection.

Having concluded that the trial court erred, we turn to whether that error was harmless. An error is harmless only when there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, we cannot say that there was little likelihood that the admission of evidence that defendant had previously abused Mitchell affected the verdict. Although the state contends that the jury would have understood that it could only consider the evidence of prior abuse in assessing Mitchell's credibility, under the circumstances here, the evidence of prior abuse risked improperly biasing the jury against defendant. Defendant's theory of the case was that defendant's friend, not defendant, was the one driving at the time of the collision. There was no direct evidence supporting that theory, as the jury did not hear from defendant himself. Therefore, any negative view held by the jury of defendant caused by the improperly admitted evidence was likely to affect their view of his proffered theory of events. In reaching that conclusion, and in rejecting the state's argument about how the jury would have understood the relevance of the evidence of prior abuse, we note that the trial court did not give a limiting instruction to the jury that it could consider the evidence of prior abuse only in assessing Mitchell's credibility. Therefore, we reverse and remand for a new trial.

Reversed and remanded.